**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BETH GOUSE ) | Civil Action No. 1:17-cv-2566 |
| 2415 N. Woodrow Street ) | |
| Arlington, VA 22207 ) | |
| ) | |
|           Plaintiff ) | |
| ) | |
|      v. ) | JURY TRIAL DEMANDED |
| ) | |
| DISTRICT OF COLUMBIA ) | |
| John A. Wilson Building ) | |
| 1350 Pennsylvania Avenue, NW ) | |
| Washington, DC 20004 ) | |
| ) | |
| Serve:  Mayor Muriel Bowser ) | |
|        1350 Pennsylvania Avenue, NW ) | |
|        Room 419 ) | |
|        Washington, DC 20004 ) | |
| ) | |
|        Office of the Attorney General ) | |
|        414 4th Street, NW ) | |
|        Suite 600S ) | |
|        Washington, DC 20001 ) | |
| ) | |
|           Defendant. ) | |

## COMPLAINT

COMES NOW, Plaintiff BETH GOUSE, Ph.D., by and through her undersigned counsel,
and complains of Defendant DISTRICT OF COLUMBIA, as follows:

## NATURE OF ACTION

1.  Plaintiff is a highly-qualified licensed clinical psychologist who is a white female.  She

worked for Defendant at Saint Elizabeths Hospital ("Saint Elizabeths" or the "Hospital") for

approximately 22 years.  Due to her work ethic, leadership, and proficiency, Plaintiff was

continually promoted.  In January 2013, she was named Chief Clinical Officer.  In June 2015,

Plaintiff was appointed to the position of Interim Chief Executive Officer ("CEO"), and she applied for the permanent CEO position in July 2015.  Plaintiff was uniquely qualified for the CEO position, as she served in both clinical and administrative leadership positions at Saint Elizabeths.  She was serving as the Interim CEO at the time of her application and had consistently received excellent performance ratings throughout her career at Saint Elizabeths.

2.   However, on February 24, 2016, the Director of the Department of Behavioral Health, Dr. Tanya Royster, announced that Dr. James Kyle would be the new CEO, despite the fact that Dr. Kyle was not as qualified as Plaintiff.  Dr. Royster specifically told Hospital staff that Dr. Kyle was an African-American male, indicating that his race and sex were critical factors in his hiring.  She also told management that Dr. Kyle had run multiple hospitals and had forensic inpatient experience, neither of which is true.  Unlike Plaintiff, Dr. Kyle had no experience running a psychiatric hospital, had been a nurse for only 10 years, and was not licensed in the District of Columbia ("D.C.").  In contrast, Plaintiff is licensed as a psychologist in D.C., had been qualified as an expert witness in D.C. Superior Court, and met the special qualifications to be a member of the Hospital forensic consultation service and Hospital Medical Staff.

3.   On February 25, 2016, Plaintiff requested to be returned to her previously held position of record, the Chief Clinical Officer position.  She also contacted Defendant's EEO Officer to file a discrimination complaint.

4.   Defendant violated its own policies by refusing to return Plaintiff to her Chief Clinical Officer Position.  In fact, the day after she contacted the EEO Officer, Plaintiff was informed that her employment would be terminated on March 11, 2016.

5.   Plaintiff brings this action to recover damages for Defendant's unlawful discrimination on the bases of race, sex, and reprisal, in violation of both Title VII of the Civil Rights Act of 1964,

as amended, 42 U.S.C. § 2000 *et seq.* ("Title VII"), and the D.C. Human Rights Act of 1977,

as amended, D.C. Code § 2-1401 *et seq.* ("DCHRA").

## JURISDICTION AND VENUE

6.  This Court has jurisdiction over Plaintiff's Title VII claims pursuant to 42 U.S.C. § 2000e-5

    and 28 U.S.C. § 1331, and over Plaintiff's DCHRA claims pursuant to 28 U.S.C. § 1367.

7.  Venue is proper pursuant to 28 U.S.C. § 1391(b).  Defendant formerly employed Plaintiff in

    D.C., and the actions at issue occurred in D.C.

## THE PARTIES

8.  During the relevant time period, Plaintiff worked for Defendant and was an employee within

    the meaning and subject to the protections of Title VII and the DCHRA.  42 U.S.C.S. § 2000e;

    D.C. Code § 2-1401.02.

9.  Defendant is a municipal corporation.   During the relevant time period, Defendant was

    Plaintiff's employer, within the meaning and subject to the requirements of Title VII and the

    DCHRA.  *Id.*

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

10.  Plaintiff exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.

11.  Plaintiff timely filed a charge of discrimination with the EEOC; the charge was docketed on

    November 17, 2016.  The U.S. Department of Justice Civil Rights Division issued the Notice

    of Right to Sue, which Plaintiff received on September 12, 2017.

12.  Plaintiff also exhausted her administrative remedies for her DCHRA claims.

13.  Plaintiff filed an informal EEO complaint with Defendant's Department of Behavioral Health

    (hereinafter, "DBH") on March 11, 2016.

14.  On April 22, 2016, DBH issued Plaintiff an Exit Letter, informing Plaintiff of her right to file

a formal complaint of discrimination with the D.C. Office of Human Rights (hereinafter, "DCOHR") within 15 calendar days.

15. Plaintiff timely filed her formal complaint with DCOHR on May 6, 2016.  Per Plaintiff's request, on or about June 2, 2017, DCOHR administratively dismissed Plaintiff's complaint without prejudice, so that Plaintiff could file this lawsuit.

## STATEMENT OF FACTS

16. Plaintiff is a member of a protected class.

17. Plaintiff's race is Caucasian.  At all relevant times, Defendant was aware of Plaintiff's race based on Plaintiff's physical appearance.

18. Plaintiff's sex is female.  At all relevant times, Defendant was aware of Plaintiff's sex based on Plaintiff's physical appearance.

### ***Plaintiff worked at Saint Elizabeths for 22 years.***

19. Plaintiff is a licensed psychologist.  She earned a B.S. in Psychology from Union College, an M.A. in Counseling Psychology from Boston College, and a Ph.D. in Counseling Psychology from Boston College.  She has been licensed as a psychologist in D.C. since 1995.

20. In September 1993, Plaintiff began her post-doctoral residency at Saint Elizabeths.

21. In May 1994, Plaintiff was hired by Defendant as a psychologist, and based upon her qualifications, detailed to a Clinical Administrator position.  Plaintiff served in this leadership role on various units, including male post-trial and pre-trial units, and on a female pre-trial/post-trial unit.  The Clinical Administrator position also entailed coordination and implementation of treatment planning as well as court-ordered competency, criminal responsibility, and risk assessment evaluations.  Based upon her expertise, Plaintiff served as an expert witness more than 200 times in D.C. Superior Court and before the Mental Health

4

Commission.  She also served on several Hospital-wide committees, as well as the Hospital Review Board.

22. Defendant promoted Plaintiff to the position of Special Assistant to the CEO in January 2007. In this capacity, Plaintiff engaged in organizational planning and coordinated development and implementation of a Hospital-wide recovery model.

23. Plaintiff quickly rose to the position of Chief of Staff in March 2008, and was named the Chief Clinical Officer of Saint Elizabeths in January 2013.  As Chief of Staff, Plaintiff's primary responsibilities included providing oversight of administrative areas, such as performance improvement, budget, and human resources.

24. As Chief Clinical Officer, Plaintiff was responsible for planning and directing hospital-wide Clinical Operations services and programming; supporting budget development and fiscal responsibility; planning, leading and managing clinical implementation of the U.S. Department of Justice settlement agreement signed in 2007; leading efforts to address and reduce violence at Saint Elizabeths; and developing a comprehensive treatment program that provided more than 500 different weekly group sessions.  Plaintiff's clinical leadership and administrative expertise was instrumental in the dismissal with prejudice, in September 2014, of a lawsuit brought by the U.S. Department of Justice.

25. In June 2015, Defendant requested that Plaintiff serve as interim CEO and promoted Plaintiff to the position of Interim CEO.  Plaintiff successfully oversaw operations of Saint Elizabeths and managed an operating budget that exceeded $92M and a staff of approximately 800 employees.  Plaintiff's primary job duties included directing all clinical and administrative operations and representing the hospital on key issues to the Mayor's Office, D.C. Council, D.C. Superior Court, and U.S. District Court.

26. Throughout Plaintiff's employment at Saint Elizabeths, she always received excellent performance ratings and had no history of discipline.  Between 2008, when DBH adopted the Management Supervisory Service, and Dr. Tanya Royster's arrival in August 2015, Plaintiff consistently received the highest rating of "5," "Role Model."

### *Dr. Tanya Royster was hired as the DBH Director.*

27. Tanya Royster, MD (African American, female) was hired as DBH's Director in August 2015. In that position, she became Plaintiff's first-line supervisor.  Prior to that, Plaintiff's first-line supervisor was Interim Director Barbara Bazron.

### *Plaintiff contacted Defendant's EEO Officer.*

28. Plaintiff met with DBH's EEO Officer David Prince on October 20, 2015, about filing a discrimination complaint.  Plaintiff said she believed Dr. Royster was discriminating against her and subjecting her to a hostile work environment by frequently cancelling their meetings, coming to Saint Elizabeths without notice and without meeting with Plaintiff, demonstrating a disrespectful and hostile attitude towards Plaintiff in front of peers and subordinates, and removing some of her job duties.

29. Mr. Prince provided Plaintiff with information about the EEO process, but Plaintiff decided not to file an official complaint at that time.  She had applied for the permanent CEO position and had not yet been interviewed.  Based on the unfair treatment Dr. Royster had already subjected her to, Plaintiff was afraid Dr. Royster would not select her for the CEO position in retaliation for filing an EEO complaint.

### *Dr. Royster reassigned some of Plaintiff's job duties to another employee.*

30. On December 7, 2015, Dr. Royster called Plaintiff and said that she had learned of concerns about Dr. Johnson.  Specifically, Dr. Royster asked if Plaintiff knew about Dr. Johnson having

been investigated for abuse.  Plaintiff confirmed that she was aware of such an allegation and told Dr. Royster that she would check to see what information was available.

31. The following day, December 8, 2015, Plaintiff gave Dr. Royster the investigation report. Plaintiff also informed Dr. Royster that two psychologists, who reported to Dr. Johnson, had approached Plaintiff with concerns about her behavior towards patients and staff.  Pursuant to Dr. Royster's request, Plaintiff provided the psychologists' contact information to Dr. Royster's assistant.  However, according to both psychologists, Dr. Royster never contacted them about Dr. Johnson.

32. On or about December 10, 2015, Dr. Royster announced that she had promoted Forensic Services Director Dr. Nicole Johnson (African American/black, female) to the new position of Director of Forensic Services for DBH.

33. To the best of Plaintiff's knowledge, the new Director of Forensic Services position had not been posted or otherwise filled pursuant to Defendant's human resources ("HR") policies, or D.C. statute or regulations.  In addition, this decision was made at least a month prior as evidenced by email notification on November 18, 2015, by Dr. Johnson of the meeting in which Dr. Royster planned to announce her appointment of Dr. Johnson.  In addition, on December 2, 2015, Plaintiff was not included in a meeting with D.C. Superior Court leadership about bed space issues at the Hospital and the associated waiting list.  Plaintiff heard about the meeting from a subordinate.

34. Dr. Johnson's promotion gave her significant authority at Saint Elizabeths because the majority of hospital patients have a forensic legal status.  This was surprising because, in addition to Dr. Johnson's treatment of patients and staff, she had no supervisory authority to provide oversight or management of Saint Elizabeths patients pursuant to her previous duties

as Legal Services Director.  In fact, she was not a member of Saint Elizabeths medical staff, did not have Hospital privileges, and was not a member of the Hospital Forensic Review Board.

35. Defendant began listing Dr. Johnson as the point of contact on the letter that goes to the D.C. Superior Court in cases involving persons acquitted by reason of insanity.  However, the D.C. Code specifies that Saint Elizabeths' CEO (*i.e.,* the "superintendent") is responsible for reporting the findings of Hospital Staff related to the commitment of defendants hospitalized at Saint Elizabeths..

36. Since 2007, Plaintiff had served as Saint Elizabeths' lead liaison to the D.C. Superior Court on civil commitment issues as well as pretrial/post-trial related matters.  In that capacity, Plaintiff routinely worked with D.C. Superior Court judges, the U.S. Attorney's Office, the Public Defender Service, and magistrate judges for the Mental Health Commission.  Plaintiff attended the quarterly Pretrial Mental Examination Committee meetings and either presented hospital-related data or supervised the presentation of data.  Additionally, Plaintiff, in her role as Interim CEO, reviewed and signed all correspondence to the D.C. Superior Court involving all criminal defendants.  However, without notice or explanation, Dr. Royster removed these duties from Plaintiff and reassigned them to Dr. Johnson.

37. At no time prior to the announcement of Dr. Johnson's new position was Plaintiff informed by Dr. Royster that she was considering changes that would impact the Hospital patient care and the supervisory responsibilities of Plaintiff.  Further, Plaintiff was not given an opportunity to provide input into this major decision, despite her extensive forensic experience relative to Dr. Johnson's.  In addition, Plaintiff was not given the opportunity to inform Hospital staff about this major change, and in fact, was notified at the same time as

subordinates.

### *Dr. Royster continued to treat Plaintiff less-favorably than African-American employees.*

38. In Plaintiff's capacity as Interim CEO, she attended an oversight hearing before the DC Council on February 4, 2016.

39. Dr. Royster, Director of Child and Youth Services Denise Dunbar (African American/ black/female), Interim Deputy Director of Substance Abuse Services Marquitta Duvernay (African American/black/female), Director of Adult Services Oscar Morgan (African American/black/male), and Director of the Office of Accountability Atiya Frame-Shamblee (American/black/female) also attended the hearing on DBH's behalf.

40. During the hearing, Council members asked Dr. Royster questions pertaining specifically to Saint Elizabeths.  Dr. Royster provided either incomplete or inaccurate responses to the majority of those questions.  On multiple occasions, she deferred to Ms. Dunbar, Ms. Duvernay, or Ms. Frame-Shamblee; however, only once did Dr. Royster defer to Plaintiff to answer a question about the Hospital.

### *Defendant gave Plaintiff a cursory interview and selected another candidate as CEO.*

41. On July 22, 2015, Plaintiff applied for the permanent position of CEO.  Throughout the fall of 2015, Plaintiff made multiple inquiries regarding the status of the application, but no information was forthcoming.

42. On December 31, 2015, Director of the Mayor's Office of Talent and Appointments ("MOTA") Steve Walker (African American/black, male) emailed Plaintiff, stating that someone would contact her on January 4, 2016, to schedule her interview for the CEO position.

43. However, Plaintiff never heard from anyone, so she followed up with Mr. Walker on January 11, 2016.  Plaintiff did not receive a response until late January, when she received an

invitation for an interview on February 5, 2016.

44. Mr. Walker, Dr. Royster, and Associate Director of MOTA Alan Karnofsky (Caucasian/white/male), interviewed Plaintiff on February 5, 2016.  The interview started 15 minutes late and lasted approximately 25 minutes.

45. Mr. Walker asked Plaintiff generic questions about Saint Elizabeths (*e.g.*, patient population, admission process), rather than substantive questions about her accomplishments in her various positions at the Hospital as Chief of Staff, Chief Clinical Officer, and as Interim CEO, and her vision for the hospital.  Dr. Royster, who would be the CEO's direct supervisor, did not ask Plaintiff any questions.  Plaintiff was not given an opportunity to highlight accomplishments during the interview.

46. On February 10, 2016, Plaintiff emailed the interview panelists to thank them for the interview and to provide detailed information about her accomplishments and vision, as she was not questioned or given an opportunity to discuss these topics these during the interview.

47. On February 11, 2016, Mr. Walker emailed Plaintiff, indicating that she would be informed once a candidate had been selected for the CEO position.

48. On Monday, February 22, 2016, Plaintiff met with Dr. Royster and Mr. Walker.  Mr. Walker told Plaintiff she had not been selected for the CEO position and that she had the right to return to her position of record (*i.e.,* Chief Clinical Officer).

49. After Mr. Walker left the meeting, Dr. Royster told Plaintiff there would be a few days to transition and that she wanted Plaintiff to provide a briefing to the new CEO.

50. Later that afternoon, Plaintiff called DBH's HR Director Frankie Wheeler to discuss separation options.  Ms. Wheeler reviewed Chapter 9 of the District Personnel Manual and informed Plaintiff she should contact Mr. Walker directly.  Plaintiff contacted Mr. Walker to

discuss her options for separating from service if she chose to do so in lieu of returning to her prior position of record, Chief Clinical Officer.   Mr. Walker indicated that he would check with the Deputy Mayor.

51. Mr. Walker called Plaintiff the following afternoon, Tuesday, February 23, 2016, and informed her that she would be eligible for 10 weeks of severance pay.  Over the next few days, Plaintiff sent Mr. Walker several emails asking for written information about her options so she could review the specific details, before deciding how to proceed.  Mr. Walker did not send the information until February 26, 2017.

52. On February 24, 2016, Dr. Royster held a meeting, to which Plaintiff was not invited, with approximately 25 managers and other hospital staff.  Dr. Royster announced that Dr. James Kyle would be the new CEO.  Dr. Royster specifically mentioned that Dr. Kyle was a registered nurse and an African-American male.  She also told staff that Dr. Kyle was single, did not have children, and would be able to work a lot.  During the meeting, Dr. Royster represented that Dr. Kyle had both forensic psychiatric experience and inpatient psychiatric experience, neither of which is accurate.  She also indicated that Dr. Kyle shared her vision for the Hospital, which was perplexing as Dr. Royster had never shared her vision with Plaintiff or senior leadership.

53. On February 25, 2016, Plaintiff emailed Mr. Walker and said that she would like to be returned to her Chief Clinical Officer position.

54. Later that day, Plaintiff emailed Mr. Prince about filing an EEO complaint.

### *Defendant refused to reinstate Plaintiff as Chief Clinical Officer, in violation of D.C. policy.*

55. On February 26, 2016, the day after Plaintiff contacted Mr. Prince, Mr. Walker sent Plaintiff an email with two attachments: a letter stating that she was being placed on administrative

leave until her employment terminated on March 11, 2016, and a separation agreement.  Dr. Royster was copied on the email.  Mr. Walker did not address Plaintiff's request to be returned to her position of record.

56. Later that day, Plaintiff met with Dr. Royster and Ms. Wheeler.  They gave Plaintiff a copy of the administrative leave letter but did not provide information about the proposed separation agreement.  Plaintiff was told to turn in her keys and badge and leave the building promptly. Ms. Wheeler asked Plaintiff if she had requested to be returned to her position of record, and Plaintiff confirmed that she had.  The parties never executed a separation agreement.

57. On February 24, 2016, Dr. Royster told senior staff she chose Dr. Kyle because Plaintiff was not a good fit for Saint Elizabeths and did not share Dr. Royster's vision.  However, Dr. Royster later told Defendant's EEO investigator that Dr. Kyle was selected because his interview was better than Plaintiff's.

58. On February 29, 2016, Mayor Bowser issued a press release announcing that Dr. James Kyle had been hired as Saint Elizabeths' new CEO, and that he was a "nationally board certified health care executive with over thirty years of experience in the medical field."  Dr. Royster's department-wide email to all staff repeated that Dr. Kyle started his career as a registered nurse and had "more than thirty years' experience in the health care field []".  This information did not accurately represent Dr. Kyle's qualifications and experience, but exaggerated his training and experience.

59. Defendant appointed Dr. Richard Gontang (Asian/male) as the new Chief Clinical Officer, thus replacing Plaintiff in her position of record.

### ***Plaintiff was significantly more qualified for the CEO position than Dr. Kyle.***

60. Dr. Kyle received his Ph.D. in Leadership from Charisma University, an online university

accredited only by the Turks and Caicos Ministry of Education.  Plaintiff has a Ph.D. in Counseling Psychology from Boston College.

61. Plaintiff had worked at Saint Elizabeths for approximately 22 years, and she successfully served as the Interim CEO for approximately nine months.

62. Dr. Kyle had never run a psychiatric hospital nor did he have any forensic psychiatric experience.  His only experience as a CEO was at a 35-bed medical/surgical hospital on an Indian reservation in South Dakota.  He served as CEO for approximately four months, leaving after the hospital was notified by the Centers for Medicare and Medicaid Services that its accreditation was at risk.

63. Despite the fact that Dr. Kyle had less relevant experience, Defendant paid him a higher salary than Plaintiff received as Interim CEO.  On information and belief, Defendant paid Dr. Kyle an annual salary of approximately $171,000.

## COUNT 1
### (42 U.S.C. § 2000 – Discrimination on the Basis of Race)

64. Plaintiff repeats and realleges paragraphs 1–63, above, as if fully set forth herein.

65. On or about February 22, 2016, Defendant did not select Plaintiff for the position of CEO because of Plaintiff's race.

66. By and through its conduct, Defendant violated Title VII.

67. As a result, Plaintiff has suffered damages including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT 2
### (42 U.S.C. § 2000 – Discrimination on the Basis of Sex)

68. Plaintiff repeats and realleges paragraphs 1–67, above, as if fully set forth herein.

69. On or about February 22, 2016, Defendant did not select Plaintiff for the position of CEO

because of Plaintiff's sex.

70. By and through its conduct, Defendant violated Title VII.

71. As a result, Plaintiff has suffered damages including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

**COUNT 3**

(42 U.S.C. § 2000 – Retaliation for Protected EEO Activity)

72. Plaintiff repeats and realleges paragraphs 1–71, above, as if fully set forth herein.

73. On or about February 22, 2016, Defendant did not select Plaintiff for the position of CEO because Plaintiff engaged in protected EEO activity.

74. By and through its conduct, Defendant violated Title VII.

75. As a result, Plaintiff has suffered damages including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

**COUNT 4**

(42 U.S.C. § 2000 – Discrimination on the Basis of Race)

76. Plaintiff repeats and realleges paragraphs 1–75, above, as if fully set forth herein.

77. On February 26, 2016, Defendant refused to reinstate Plaintiff to the position of Chief Clinical Officer because of Plaintiff's race.

78. By and through its conduct, Defendant violated Title VII.

79. As a result, Plaintiff has suffered damages including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

**COUNT 5**

(42 U.S.C. § 2000 – Discrimination on the Basis of Sex)

80. Plaintiff repeats and realleges paragraphs 1–79, above, as if fully set forth herein.

81. On February 26, 2016, Defendant refused to reinstate Plaintiff to the position of Chief Clinical

Officer because of Plaintiff's sex.

82. By and through its conduct, Defendant violated Title VII.

83. As a result, Plaintiff has suffered damages including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT 6
### (42 U.S.C. § 2000 – Retaliation for Protected EEO Activity)

84. Plaintiff repeats and realleges paragraphs 1–83, above, as if fully set forth herein.

85. On February 26, 2016, Defendant refused to reinstate Plaintiff to the position of Chief Clinical Officer because Plaintiff engaged in protected EEO activity.

86. By and through its conduct, Defendant violated Title VII.

87. As a result, Plaintiff has suffered damages including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT 7
### (42 U.S.C. § 2000 – Discrimination on the Basis of Race)

88. Plaintiff repeats and realleges paragraphs 1–87, above, as if fully set forth herein.

89. On March 11, 2016, Defendant terminated Plaintiff's employment because of Plaintiff's race.

90. By and through its conduct, Defendant violated Title VII.

91. As a result, Plaintiff has suffered damages including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT 8
### (42 U.S.C. § 2000 – Discrimination on the Basis of Sex)

92. Plaintiff repeats and realleges paragraphs 1–91, above, as if fully set forth herein.

93. On March 11, 2016, Defendant terminated Plaintiff's employment because of Plaintiff's sex.

94. By and through its conduct, Defendant violated Title VII.

95. As a result, Plaintiff has suffered damages including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT 9
### (42 U.S.C. § 2000 – Retaliation for Protected EEO Activity)

96. Plaintiff repeats and realleges paragraphs 1–95, above, as if fully set forth herein.

97. On March 11, 2016, Defendant terminated Plaintiff's employment because Plaintiff engaged in protected EEO activity.

98. By and through its conduct, Defendant violated Title VII.

99. As a result, Plaintiff has suffered damages including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT 10
### (D.C. Code § 2-1402.11 – Discrimination on the Basis of Race)

100. Plaintiff repeats and realleges paragraphs 1–99, above, as if fully set forth herein.

101. On or about February 22, 2016, Defendant did not select Plaintiff for the position of CEO because of Plaintiff's race.

102. By and through its conduct, Defendant violated the DCHRA.

103. As a result, Plaintiff has suffered damages including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT 11
### (D.C. Code § 2-1402.11 – Discrimination on the Basis of Sex)

104. Plaintiff repeats and realleges paragraphs 1–103, above, as if fully set forth herein.

105. On or about February 22, 2016, Defendant did not select Plaintiff for the position of CEO because of Plaintiff's sex.

106. By and through its conduct, Defendant violated the DCHRA.

107. As a result, Plaintiff has suffered damages including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT 12

### (D.C. Code § 2-1402.11 – Retaliation for Protected EEO Activity)

108. Plaintiff repeats and realleges paragraphs 1–107, above, as if fully set forth herein.

109. On or about February 22, 2016, Defendant did not select Plaintiff for the position of CEO because Plaintiff engaged in protected EEO activity.

110. By and through its conduct, Defendant violated the DCHRA.

111. As a result, Plaintiff has suffered damages including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT 13

### (D.C. Code § 2-1402.11 – Discrimination on the Basis of Race)

112. Plaintiff repeats and realleges paragraphs 1–111, above, as if fully set forth herein.

113. On February 26, 2016, Defendant refused to reinstate Plaintiff to the position of Chief Clinical Officer because of Plaintiff's race.

114. By and through its conduct, Defendant violated the DCHRA.

115. As a result, Plaintiff has suffered damages including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT 14

### (D.C. Code § 2-1402.11 – Discrimination on the Basis of Sex)

116. Plaintiff repeats and realleges paragraphs 1–115, above, as if fully set forth herein.

117. On February 26, 2016, Defendant refused to reinstate Plaintiff to the position of Chief Clinical Officer because of Plaintiff's sex.

118. By and through its conduct, Defendant violated the DCHRA.

119. As a result, Plaintiff has suffered damages including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT 15

### (D.C. Code § 2-1402.11 – Retaliation for Protected EEO Activity)

120. Plaintiff repeats and realleges paragraphs 1–119, above, as if fully set forth herein.

121. On February 26, 2016, Defendant refused to reinstate Plaintiff to the position of Chief Clinical Officer because Plaintiff engaged in protected EEO activity.

122. By and through its conduct, Defendant violated the DCHRA.

123. As a result, Plaintiff has suffered damages including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT 16

### (D.C. Code § 2-1402.11 – Discrimination on the Basis of Race)

124. Plaintiff repeats and realleges paragraphs 1–123, above, as if fully set forth herein.

125. On March 11, 2016, Defendant terminated Plaintiff's employment because of Plaintiff's race.

126. By and through its conduct, Defendant violated the DCHRA.

127. As a result, Plaintiff has suffered damages including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT 17

### (D.C. Code § 2-1402.11 – Discrimination on the Basis of Sex)

128. Plaintiff repeats and realleges paragraphs 1–127, above, as if fully set forth herein.

129. On March 11, 2016, Defendant terminated Plaintiff's employment because of Plaintiff's sex.

130. By and through its conduct, Defendant violated the DCHRA.

131. As a result, Plaintiff has suffered damages including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT 18

### (D.C. Code § 2-1402.11 – Retaliation for Protected EEO Activity)

132. Plaintiff repeats and realleges paragraphs 1–131, above, as if fully set forth herein.

133. On March 11, 2016, Defendant terminated Plaintiff's employment because Plaintiff engaged in protected EEO activity.

134. By and through its conduct, Defendant violated the DCHRA.

135. As a result, Plaintiff has suffered damages including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## JURY DEMAND

Plaintiff seeks a trial by jury on all Counts

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant on all Counts.  Plaintiff further requests that the Court award her $300,000 on each Count in compensatory damages for pain and suffering; plus lost wages and benefits; pre- and post-judgment interest; costs; attorneys' fees; and any such other relief as is just and proper.

Dated:  November 30, 2017

Respectfully submitted,

ALAN LESCHT AND ASSOCIATES, P.C.

_____/s/_____

Alan Lescht [441691]
Sara McDonough [1022641]
1050 17th Street, NW, Suite 400
Washington, DC 20036
Tel: (202) 463-6036
Fax: (202) 463-6067
alan.lescht@leschtlaw.com
sara.mcdonough@leschtlaw.com
*Counsel for Plaintiff*